**Fourth Court of Appeals**
San Antonio, Texas


## MEMORANDUM OPINION

No. 04-17-00101-CV

**IN THE INTEREST OF S.R.M.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2015PA01289
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  August 2, 2017

AFFIRMED

J.M. appeals the trial court's order terminating his parental rights to S.R.M., contending the evidence is legally and factually insufficient to support the termination of the parent-child relationship pursuant to section 161.001(b)(2) of the Texas Family Code.  We affirm the trial court's order.

### BACKGROUND

S.R.M. tested positive for heroin at her birth in March 2015.  At the time, J.M. and S.R.M.'s mother were living in a motel and had no permanent residence.  On June 22, 2015, the Texas Department of Family and Protective Services filed an "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and

Order Setting Hearing." S.R.M. was initially placed in a foster home and then moved to live with a relative.

The Department prepared a family service plan for J.M. and filed it with the court. The service plan provided for J.M.'s visitation with S.R.M. three times a month so long as the conditions of the family service plan were met. The service plan required J.M. to periodically submit to a urinalysis for drug testing, but he failed to report. At the beginning of the case, J.M. tested positive for cocaine, methamphetamines, and amphetamines.

J.M. has a lengthy criminal history, including arrests for burglary of a habitation, evading arrest, felony possession of a firearm, assault causing bodily injury, theft of property, possession of a controlled substance, fraud, evading detention, and failure to identify as a fugitive. At the time of trial on November 9, 2016, J.M. was in jail for theft and had been confined since June 2016. While there is nothing in the record clearly stating whether he had been in jail prior to June 2016, there is testimony that J.M. was in jail, out on bond, and then arrested again in June 2016. At the time of trial, J.M. was awaiting his criminal trial set for December 5, 2016, at which time J.M. believed he would be released. J.M. testified that upon his release he would be able to provide S.R.M. with a place to live and obtain the finances to support her because he could live with his mother and would have a job waiting for him.

J.M. stopped financially providing for S.R.M. once she was placed with a foster family, stating he was not aware he needed to pay anything to support his child. J.M. testified that he could not complete the services stated in the family service plan because he was in jail. The Department caseworker testified that J.M. could have completed the services in a few months' time, before he went to jail, or while he was serving his time in jail.

At the conclusion of the bench trial, the trial court found that J.M.'s parental rights to S.R.M. should be terminated pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (N),

(O), and (P), and that termination of the parent-child relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (O), (P); *id.* at § 161.001(b)(2) (West Supp. 2016).

## STANDARD OF REVIEW

A trial court may terminate an individual's parental rights, severing the parent-child relationship, only upon a showing, by clear and convincing evidence, that one or more statutory grounds for termination exists, and the termination is in the best interest of the child. *Id.* at § 161.001(b)(1), (2) (West Supp. 2016); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). This heightened standard stems from the permanency and unalterable changes that termination of a parent-child relationship causes both the parent and child. *In re D.M.*, 452 S.W.3d 462, 469 (Tex. App.—San Antonio 2014, no pet.). The natural rights between a parent and their child is of constitutional dimension and the termination of this right is "complete, final, and irrevocable." *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). Consequently, termination proceedings are strictly scrutinized and "involuntary termination statutes are strictly construed in favor of the parent." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

When reviewing a legal insufficiency claim, a court looks at "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference, "a reviewing court must assume that the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so." *Id.* Further, a reviewing court should disregard "all evidence that a reasonable factfinder could have disbelieved or found to have

been incredible." *Id*. As such, a reviewing court considers "evidence favorable to termination if a reasonable factfinder could," and disregards "contrary evidence unless a reasonable factfinder could not." *In re D.M.*, 452 S.W.3d at 469. Evidence is legally insufficient if the reviewing court determines "no reasonable factfinder could form a belief or conviction that the matter that must be proven is true." *In re J.F.C.*, 96 S.W.3d at 266.

When reviewing a factual insufficiency claim, a court gives deference to the factfinder's findings. *In re D.M.*, 452 S.W.3d at 469. Meaning, we give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. The reviewing court considers and weighs all the evidence, only setting aside the judgment "if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust." *Trevino v. Dep't of Protective & Regulatory Servs.*, 893 S.W.2d 243, 251 (Tex. App.—Austin 1995, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). "[T]he reviewing court must refrain from substituting its judgment for that of the factfinder." *In re D.M.*, 452 S.W.3d at 469 (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)).

## PREDICATE FINDINGS

Only one finding under section 161.001(b)(1) is "necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Here, the trial court ordered the termination of J.M.'s parental rights based on the predicate grounds of section 161.001(b)(1)(D), (E), (N), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P) (West Supp. 2016). On appeal, J.M. does not challenge the sufficiency of the evidence to support the trial court's findings that he: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional

well-being of the child; (3) constructively abandoned the child; (4) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child; and (5) used a controlled substance in a manner that endangered the health or safety of the child. *Id.* As such, we need only focus on whether the State proved, by clear and convincing evidence, termination of J.M.'s parental rights was in the best interest of S.R.M. "[E]vidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest." *In re R.S.D.*, 446 S.W.3d 816, 820 (Tex. App.—San Antonio 2014, no pet.). This is because "the same evidence may be probative of both issues." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

### BEST INTEREST FINDING

In considering the best interest of the child, there is a strong presumption that the best interest of the child is served by preserving the parent-child relationship. *In re D.M.*, 452 S.W.3d at 470 (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006)). However, there is also a presumption that "prompt and permanent placement of the child in a safe environment is in the child's best interest." *Id.*; TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016). "Best interest" neither requires the "proof of any unique set of factors, nor … limit[s] proof to any specific factors." *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re R.S.D.*, 446 S.W.3d at 820.

Courts, in determining the best interest of the child, have considered a multitude of factors, including: "(1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these

individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent." *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, and "evidence is not required on all nine factors to support a best interest finding." *Id*. at 372; *In re J.D.*, 436 S.W.3d 105, 117 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

### A. The Desires of the Child and Plans for the Child

At the time of trial, S.R.M. was almost two years old. "The young age of the child render[s] consideration of the child's desires neutral." *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.). However, "[w]hen a child is too young to express her desires, the factfinder may consider whether the child has bonded with the foster family, is well-cared for by them, and has spent minimal time with a parent." *In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at *3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.) (citing *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Here, the Department caseworker, when asked how S.R.M. was doing at the time of trial, replied that S.R.M. was doing well and thriving. The caseworker continued by stating S.R.M. was "very well bonded" with her caregivers and up to date on her medical and dental care. The caseworker further established that the long-term goal for S.R.M. was to have her adopted by her current caregivers who want to proceed with adoption. Additionally, the Court Appointed Special Advocate (CASA) worker testified that there was no reason to move S.R.M. from her current caregivers. As such, the first *Holley* factor, the child's desires, favors termination of J.M.'s parental rights. The sixth *Holley* factor, plans for the child by the person seeking custody, relates to the first factor and also weighs in favor of the trial court's best-interest finding.

**B. Needs of the Child, J.M.'s Parenting Abilities, and Stability of the Home**

The second, fourth, and seventh *Holley* factors are all related in our consideration of the best interests of the child. "Stability and permanency are paramount in the upbringing of children." *In re J.D.*, 436 S.W.3d at 120. "Children require secure, stable, long-term, continuous relationships with their parents or foster parents." *Castorena v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-02-00653-CV, 2004 WL 903906, at \*10 (Tex. App.—Austin Apr. 29, 2004, no pet.) (mem. op.).

The family S.R.M. was placed with was taking care of her medical and dental needs and wanted to proceed with adoption. S.R.M. had been with the family for almost an entire year, or half her life, and the Department caseworker considered her to be "thriving" in that environment. J.M., in contrast, has had no contact with S.R.M. since she was placed in foster care. The caseworker expressed her belief that J.M. never showed much interest in being there for S.R.M. As examples, the caseworker testified that J.M. had done nothing to support S.R.M. financially and that although visitations were set up, J.M. never showed. This is some evidence that S.R.M.'s needs would be appropriately met by termination of J.M.'s parental rights.

The seventh *Holley* factor is the stability of the home, and to the extent that factor is commonly interpreted to encompass a parent's ability to provide the child with food, clothing, and shelter, it would appear to weigh in favor of termination. *See In re R.R.A.*, No. 04-16-00698-CV, 2017 WL 1066816, at \*4 (Tex. App.—San Antonio Mar. 22, 2017, pet. denied). A "factfinder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet a child's needs in the future." *In re J.D.*, 436 S.W.3d at 118. J.M. testified he believed he had a bond with S.R.M., yet he was in prison for a quarter of her life, and has neither provided for her, nor had contact with her, since she was four months old. J.M. believed he would be able to provide for S.R.M. upon release from jail because he would have a place to live with his

mother and a job pouring concrete that pays twenty-two dollars an hour. This testimony is not required to be taken as true by the trial court because "a trial court is not bound to accept the truth or accuracy of a parent's testimony either as to past actions or future intentions." *In re D.M.*, 452 S.W.3d at 472. Therefore, despite J.M.'s testimony, the trial court could have believed J.M. would not continuously provide financial support for S.R.M.'s needs because in the past, he had not. Further, the trial court could have reasonably inferred from J.M.'s incarceration that he would be unable to provide a stable home for S.R.M.

### C. Present and Future Emotional and Physical Danger to the Child

The third *Holley* factor, the current and future emotional and physical danger to the child, weighs in favor of termination. J.M. has a lengthy criminal history, including arrests for burglary of a habitation, evading arrest, felony possession of a firearm, assault causing bodily injury, theft of property, possession of a controlled substance, fraud, evading detention, and failure to identify as a fugitive. J.M. was confined at the time of trial for a misdemeanor charge that was enhanced to a felony. J.M.'s past behavior, criminal history, and current incarceration at the time of trial could reasonably lead the trial court to conclude that such behavior would likely continue in the future. *See In re D.M.*, 452 S.W.3d at 472 ("A factfinder in a termination case may permissibly infer that a parent's future conduct may well be measured by recent deliberate past conduct as it relates to the same or a similar situation."); *see also In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (evidence of parent's criminal activity may support trial court's best interest finding). Further, the evidence showed J.M. tested positive for cocaine, methamphetamines, and amphetamines at the beginning of the case, and failed to submit to further drug screenings. *See Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (continued illegal drug use after

child's removal is conduct that jeopardizes parental rights and may be considered in best-interest determination).

### Availability of Assistance and Parental Acts and Omissions

The fifth *Holley* factor, whether programs are available to assist the person seeking custody in promoting the best interests of the child, weighs in favor of termination. The Department caseworker testified J.M. received the family service plan months before he went to jail, services in the plan requiring performance were able to be completed in that amount of time, and there were services that J.M. could have done while in jail but failed to do.

Finally, we consider the eighth and ninth *Holley* factors together, the acts and omissions of the parent that indicate the parent-child relationship is improper, as well as any excuses therefor, and conclude the factors weigh in favor of termination. The Department caseworker testified that during her visits to the jail, J.M. expressed to her that he "messed up" by not getting involved in the services, but that he does not want to give up because he loves S.R.M. When asked if J.M. admitted to her that he did not complete any of the services on his family service plan, the caseworker responded, "Yes." The Department caseworker testified that J.M.'s visitation plan allowed him to visit S.R.M. three times a month, provided the conditions of the plan were met. One such condition included a urinalysis, which, according to the caseworker, J.M. never showed up to do, despite being asked several times by the caseworker to complete a urinalysis before October 5, 2015, when he signed the family service plan.

Viewing all the evidence in the light most favorable to the judgment, we conclude the trial court could have formed a firm belief or conviction that termination of J.M.'s parental rights was in S.R.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 265-66. Viewing the same evidence in a neutral light, the disputed evidence is not so significant

as to prevent a factfinder from forming a firm belief or conviction that termination of J.M.'s parental rights was in S.R.M.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 265-66.

**CONCLUSION**

We hold the evidence is legally and factually sufficient to support the trial court's best interest finding. We therefore overrule J.M.'s sole issue on appeal and affirm the trial court's termination order.

Rebeca C. Martinez, Justice