**Opinion filed May 30, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00006-CV

_____

## IN THE INTEREST OF G.G., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10686-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, H.C., and the father, C.G., to five-year-old G.G.[1] Only C.G. has appealed. On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the child's best interest. We affirm the trial court's order of termination.

---

[1]The trial court also terminated the parental rights of the mother, H.C., and the father, C.R., to C.C. Neither parent appeals the trial court's termination order as it relates to C.C. In these cases, we use pseudonyms to protect the identities of children. TEX. R. APP. P. 9.8(b)(2).

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than six months, and despite the Department's reasonable efforts to return the child to Appellant, he did not regularly visit or maintain significant contact with the child, and demonstrated an inability to provide the child with a safe environment; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the child. *See id.* § 161.001(b)(1)(N), (O). Appellant does not challenge these findings.

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). It is this finding that Appellant challenges on appeal. Specifically,

Appellant contends that the trial court's finding that termination is in G.G.'s best interest is not supported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex.

App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

In February of 2022, the Department received a referral due to the odor of marihuana emanating from the residence of H.C. and her three children, C.C., G.G., and J.L. During the investigation, Department Investigator Sydney Pieske learned that Appellant was G.G.'s biological father,[2] but, according to H.C., he was not "super involved." H.C. also reported that Appellant used cocaine, methamphetamine, "dabs, marijuana, XOs," as well as alcohol. Pieske contacted Appellant, whose roommate was on community supervision for aggravated sexual assault of a child. Appellant admitted to using marihuana but claimed that he "never used while [C.C. and G.G.] were around."

---

[2]C.C.'s biological father, C.R., executed an affidavit of voluntary relinquishment of his parental rights; as we have said, C.C. is not a subject child of this appeal. Although Appellant is not C.C.'s biological father, and has no parental rights to C.C., the evidence indicates that Appellant and his parents treated C.C. as part of the family.

5

The children were removed in April of 2022, and C.C. and G.G. were placed with Appellant's parents. After C.C. was assaulted by his uncle, the children were placed with H.C.'s former employer and her husband. H.C. executed an affidavit of voluntary relinquishment and opted that C.C. and G.G. would remain with her former employer.

The Department prepared a family plan of service for Appellant, which required, among other things, that he participate in counseling, submit to drug testing, and attend scheduled visitations with G.G. However, he completed none of his required services, drug tested only twice, and missed several scheduled visitations with G.G. In June of 2022, Appellant tested positive for cocaine, cocaine metabolite, and marihuana.

The record further shows that Appellant was on community supervision for aggravated assault and was incarcerated at the time of the final hearing in October of 2023. After three witnesses testified, the trial court recessed and resumed the hearing approximately two months later. By December of 2023, Appellant had been released and was living in a halfway house. He was not present when the final hearing resumed, and his trial counsel presented no evidence "as to [the] status of [Appellant's] rehabilitation."

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(N) and (O) and found termination to be in the best interest of the child. This appeal followed.

### III. *The Best Interest of the Child Determination*

In Appellant's sole issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the child.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th

6

Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). Evidence that is relevant to

7

Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Thus, the trial court could properly consider Appellant's failure to comply with the conditions of his family service plan, his positive drug test, his refusals to submit to testing, and his criminal conduct in determining whether the termination of his parental rights was in the child's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The record shows that G.G. is doing well in his current placement with his brother C.C. and has bonded with his current caregivers. Alma Cecilio, the 2INgage permanency case manager, testified that the children are "happy," "content," and "safe." They are receiving counseling and are developmentally on target.

The child's attorney ad litem explained that G.G. "want[s] to see [his] mom" and paternal grandparents, but there was no evidence presented as to G.G.'s desire to interact with Appellant. We note that a child's desires are only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."); *see also In re J.S.*, No. 11-23-00234-CV, 2024 WL 1313075, at *8 (Tex. App.—Eastland Mar. 28, 2024, no pet. h.). Although a child's desires or wishes for residing with a parent is an important consideration in determining the best interest of the child, "it cannot override or outweigh evidence of danger to the child." *F.M.E.A.F.*, 572 S.W.3d at 732; *see also J.S.*, 2024 WL 1313075, at *8. Moreover, a child's expressed preference is not binding on the trial court; rather, it is only one factor, among others, that the trial court considers in its best interest determination. Fam. § 153.009(c) (West 2014);

8

*see J.S.*, 2024 WL 1313075, at \*8; *see also Hart v. Kozik*, 242 S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.) (citing *In re Marriage of Stockett*, 570 S.W.2d 151, 153 (Tex. App.—Amarillo 1978, no writ)).

Here, the Department endeavored to work with Appellant, but he never began his services in the year prior to his incarceration. Appellant did not submit to drug testing when requested by the Department, provided no proof of stable housing or employment, did not engage in counseling or parenting classes, and did not attend scheduled visitations with G.G. Appellant's failure to comply with his family service plan requirements and to meaningfully participate in judicial proceedings further support the trial court's best-interest finding. *See In re J.N.*, No. 11-23-00258-CV, 2024 WL 1559270, at \*4 (Tex. App.—Eastland Apr. 11, 2024, no pet. h.); *see also E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child.").

Additionally, there is no evidence that Appellant plans or intends to provide for G.G.'s physical or emotional needs. In fact, since the Department contacted Appellant in March of 2022, he has made minimal efforts to achieve sobriety, or otherwise demonstrate his ability to adequately parent G.G. Appellant ignored the Department's repeated attempts to conduct a walkthrough of his home and failed to maintain consistent contact with Cecilio. He likewise made no effort to consistently visit G.G. The uncontroverted evidence thus shows that Appellant was unwilling or unable to provide a safe and stable home for G.G., which supports the trial court's best-interest finding. *See Holley*, 544 S.W.2d at 371–72.

9

We conclude that Appellant's apathy strongly suggests that the existing parent-child relationship is not a proper one, and his parental indifference supports the trial court's finding that terminating his parental rights is in G.G.'s best interest. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest."). On this record, the trial court properly determined that clear and convincing evidence establishes that the termination of Appellant's parental rights is in the best interest of G.G. *See id.* at 823–24.

Accordingly, we overrule Appellant's sole issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

May 30, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.